## LEE ROBERTS et al. v. STATE.

No. A-6639. Opinion Filed Jan. 5, 1929.
(273 Pac. 282.)

Wilson & Roe and Hussey & Conner, for plaintiffs in error.

Edwin Dabney, Atty. Gen., for the State.

DOYLE, P. J. This appeal is from a judgment of conviction rendered on the verdict of a jury finding the defendants Lee Roberts and D. Roberts guilty of shooting another with intent to do bodily harm and fixing their punishment at confinement in the county jail for ten days.

Since the appeal was taken and awaiting decision before this court, plaintiff in error Lee Roberts departed this life, as shown by the suggestion of his death by his counsel and by the Attorney General. It is therefore considered and adjudged that the proceedings as to the plaintiff in error Lee Roberts do abate.

The sole question presented by counsel for the reversal of the conviction as to the plaintiff in error D. Roberts is the insufficiency of the evidence to sustain the same.

The prosecuting witness, John Henry, testified that on the evening of the date alleged he, in company with two other men, drove to the home of the defendants, at which place several negro cotton pickers lived in a shack nearby; that a white man, Jack Jameson, was driving the car; that he left the car and went to the cotton pickers' shack, and was there talking to the cotton pickers when the defendant Lee Roberts came up with a shotgun and ordered all of the negroes to go into the shack; that defendant D. Roberts, son of Lee Roberts, searched witness, and then ordered him off the place; that he started to leave, and, when he reached the fence, another altercation arose between him and the defendant D. Roberts. The defendant Lee Roberts came up and struck witness over the head with a gun and then shot him.

Jack Jameson, the white man who drove the prosecuting witness to the Roberts' home, testified that he was sitting in his car some 200 yards from the house, and heard a gun fire, and heard some one say, "shoot the black son-of-a-bitch;" that he did not know who made the remark, nor could he see anything, owing to the darkness.

Defendant Lee Roberts testified, in substance, that a number of negro cotton pickers that he had hired in Texas were living in the shack on his place; that he had been having considerable trouble with them on account of their getting drunk; that the prosecuting witness, John Henry, had a reputation in the community for making choc beer and other liquors and furnishing it to negroes in the community; that on the date alleged, shortly after dark, a car stopped, and a negro came by the house, going to the shack occupied by the cotton pickers; that with his son, D. Roberts, he went down to the car that had stopped

in the road and asked Mr. Jameson who was driving the car, who the negro was that went to the negro house, and Mr. Jameson said it was "shine;" that with his son he went to the negro shack; there was some trouble among the negroes—one remarked that there was a negro in the house with two guns; that he took a gun off a negro woman who was in the house, and ordered the prosecuting witness to get off the place, and prosecuting witness left the shack, and after going some 20 or 30 feet, Lee Roberts asked him why he came back and caused trouble among the negroes; then the prosecuting witness turned back and attacked D. Roberts, who struck at the negro with a stick, and was backing away from the negro when witness fired the shot.

Witness positively denied that D. Roberts said anything about shooting the negro or any other person.

As a witness in his own behalf, D. Roberts testified in substance to the same facts as his father. He further testified that a few days prior to the date of the shooting he had ordered the prosecuting witness to stay away from his father's premises; that the prosecuting witness, after leaving the shack, turned and hit him, and his father fired the shot. He denied that he ever told his father to shoot.

Considering all the testimony in the case, it is apparent that it is insufficient as a matter of law to show that the defendant D. Roberts was an accomplice in the commission of the act charged.

In our opinion, it would be destroying the presumption which arises in favor of the innocence of the accused and permitting the subversion of the rule which requires establishment of guilt beyond a

reasonable doubt to allow the conviction of the defendant D. Roberts to stand.

The judgment of the lower court as to the defendant D. Roberts is accordingly reversed.

EDWARDS and DAVENPORT, JJ., concur.